1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

EMPLOYEE PAINTERS' TRUST et al.,

                Plaintiffs,

      v.

LORN COATINGS LLC, a Washington
Limited Liability Company; and THAVY
LORN, an individual,

                Defendants.

CASE NO. 2:24-cv-00981-TL

ORDER ON MOTION FOR
DEFAULT JUDGMENT

18

      This is an action for damages and injunctive relief under the Employee Retirement

19 Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* This matter is before the

20 Court on Plaintiffs' Motion for Default Judgment. Dkt. No. 13. Having reviewed the relevant

21 record, the Court GRANTS IN PART and DENIES IN PART the motion without prejudice.

22

                **I.**      **BACKGROUND**

23 **A.**     **Factual Background**

24

      The following facts are recited as alleged in the Complaint.

1    Plaintiffs are express trusts created pursuant to trust agreements between various unions,

2    including the International Union of Painters and Allied Trades District Council 5 ("DC 5") and

3    its associated Locals, and various employer associations. Dkt. No. 1 ¶ 5. The trusts exist for the

4    purpose of providing employee benefits to participants in benefit plans governed by ERISA. *Id.*

5    ¶ 6. Defendant Lorn Coatings LLC ("Lorn Coatings") is a limited liability company registered to

6    do business in Washington. *Id.* ¶¶ 10–11. Defendant Thavy Lorn is the owner, officer, director,

7    and governor of Defendant Loan Coatings. *Id.* ¶¶ 12, 48.

8    At all relevant times, Defendant Lorn Coatings has been party and signatory to a collective

9    bargaining agreement ("CBA") with DC 5. *Id.* ¶ 13; *see* Dkt. No. 15-1 (CBA). Plaintiffs are named

10   third-party beneficiaries of the CBA. Dkt. No. 1 ¶ 21; Dkt. No. 15-1 ¶ 10.1. Under the CBA,

11   Defendant Lorn Coatings agreed to be bound by the CBA as well as the trust agreements that

12   established Plaintiffs. Dkt. No. 1 ¶ 13; *see* Dkt. No. 15-2 at 1–160 (trust agreements).

13   By the terms of the CBA and the trust agreements, Defendant Lorn Coatings is obligated

14   to submit monthly written reports showing all hours of covered work performed and to pay

15   fringe benefit contributions, benefits, dues, and/or withholdings for all employee benefits on a

16   monthly basis. Dkt. No. 1 ¶¶ 19–21. Trustees of Plaintiffs are authorized to audit payroll books

17   and records of participating employers like Defendant Lorn Coatings, who are required to make

18   their payroll books available. *Id.* ¶ 22. In the event an employer fails to make a timely payment

19   of fringe benefit contributions, the employer is liable for interest at the rate of twelve (12)

20   percent per annum until paid in full and liquidated damages at one (1) percent of unpaid

21   contributions per month until paid, with liquidated damages to accrue up to twenty (20) percent

22   or $100, whichever is greater. *See, e.g.*, Dkt. No. 15-2 at 30 (Employee Painters' Trust

23   agreement). Finally, an employer with a history of delinquent and/or late payment of

24

ORDER ON MOTION FOR DEFAULT JUDGMENT - 2

1    contributions may also be required to post a cash or surety fringe benefit bond to ensure

2    contributions are paid. Dkt. No. 1 ¶ 24; *see* Dkt. No. 15-2 at 27–28.

3         In the Complaint, Plaintiffs seek a total of $2,681.92 in delinquent fringe benefit

4    contributions from February and May 2024 in addition to $191.06 in liquidated damages and

5    $32.10 in interest. Dkt. No. 1 ¶¶ 26, 30–35, 37–38. Plaintiffs seek an additional $27.78 in

6    liquidated damages and $1.12 in interest for Defendants' failure to timely submit the March 2024

7    contribution report. *Id.* ¶¶ 27, 30–31, 36–38. Further, Plaintiffs seek an order requiring

8    Defendants to make their payroll and related records available for audit and to post a fringe

9    benefit contribution bond. *Id.* ¶¶ 22–25, 39–45. Finally, Plaintiffs seek to impose individual

10   liability on Defendant Thavy Lorn. *Id.* ¶¶ 46–50.

11   **B.    Procedural History**

12        On July 3, 2024, Plaintiffs initiated this action. *See generally* Dkt. No. 1. On July 22,

13   Plaintiffs filed proper proof of service on both Defendants. Dkt. Nos. 6, 7. To date, Defendants

14   have not appeared in this matter. Accordingly, on September 13, the Clerk entered default. Dkt.

15   No. 10. Plaintiffs now move for default judgment. Dkt. No. 13.

16        For the first time in their motion, Plaintiffs introduce a Settlement Agreement ("SA") that

17   was entered between Plaintiffs and Defendants on September 13, 2023, as the resolution to prior

18   litigation.[1] Dkt. No. 13 at 3; *see* Dkt. No. 14-1 (SA). Plaintiffs argue that Defendants failed to

19   make all payments under the SA and failed to provide documents for completion of an audit. Dkt.

20   No. 13 at 5. For this, Plaintiffs request $18,727.60 in liquidated damages "owed on the balance due

21   under the [SA] and post [SA] late submitted contribution reports" (*id.* at 11) and $5,556.11 in

22

23   _____

    [1] While neither the motion nor the SA itself identifies the prior litigation, it appears to be a prior matter that was also
24   before this Court. *See Employee Painters' Trust v. Lorn Coatings LLC*, No. C23-22, Dkt. No. 25 (W.D. Wash. Sept.
     14, 2023) (granting stipulated dismissal upon Settlement Agreement entered Sept. 13, 2023).

1    interest on the SA balance and post-SA late reports (*id.*). Plaintiffs also newly seek $4,033.46 in

2    delinquent contributions for a time period after the filing of the Complaint and not included in

3    the Complaint (*i.e.*, May, September, and October 2024). *Id.* at 4–5. Plaintiffs further seem to

4    seek an order requiring access to payroll records for an audit covering the SA period (*id.* at 6)

5    and "as requested in the Complaint's Second Claim for Relief." *Id.* at 7. Finally, as stated in the

6    Complaint, Plaintiffs seek an order requiring Defendant Lorn Coatings to post a fringe benefit

7    contribution bond (*id.* at 7) and individual liability for Defendant Thavy Lorn (*id.* at 12–14).

8    Plaintiffs also request attorney fees and costs. *Id.* at 12.

9                                  **II.    LEGAL STANDARD**

10            A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616

11    F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored," because courts

12    prefer to decide "cases on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d

13    1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment). When

14    considering whether to exercise discretion in entering default judgments, courts may consider a

15    variety of factors, including:

16                        (1) the possibility of prejudice to the plaintiff, (2) the merits of a
                         plaintiff's substantive claim, (3) the sufficiency of the complaint,
17                        (4) the sum of money at stake in the action; (5) the possibility of a
                         dispute concerning material facts; (6) whether the default was due
18                        to excusable neglect, and (7) the strong policy underlying the
                         Federal Rules of Civil Procedure.
19
      *Id.* at 1471–72. Courts reviewing motions for default judgment must accept the allegations in the
20
      complaint as true, except facts related to the amount of damages. *Geddes v. United Fin. Grp.*,
21
      559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in the pleadings, and
22
      the claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co.*
23
      *of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *see also Little v. Edward Wolff & Assocs. LLC*,
24

ORDER ON MOTION FOR DEFAULT JUDGMENT - 4

1   No. C21-227, 2023 WL 6196863, at *3 (W.D. Wash. Sept. 22, 2023) (quoting *Cripps*, 980 F.2d

2   at 1267). Damages are also limited to what was reasonably pleaded. Fed. R. Civ. P. 54(c) ("A default

3   judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

4                                       **III.    DISCUSSION**

5   **A.       Propriety of Default Judgment**

6           In general, most of the *Eitel* factors are likely satisfied for all claims. Plaintiffs would be

7   prejudiced absent an order of default judgment for the amounts due for bargained-for benefits.

8   Second, the sum of money at stake is relatively low and no more than what Defendants owe

9   Plaintiffs. *See Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014)

10  (stating that this factor accounts for "the money requested in relation to the seriousness of the

11  defendant's conduct, whether large sums of money are involved, and whether the recovery

12  sought is proportional to the harm caused by defendant's conduct" (internal citations and

13  quotation omitted)). Third, there is no evidence suggesting a likelihood of disputes regarding

14  material facts. Fourth, there is no evidence that default was due to excusable neglect, as Plaintiffs

15  have shown that Defendants were properly served but have nevertheless failed to appear in this

16  matter. Therefore, these factors weigh in favor of default judgment, notwithstanding the strong policy

17  under the Federal Rules of Civil Procedure that claims be resolved through contested litigation.

18          The Court now considers the remaining factors as applied to each claim. *See PepsiCo,*

19  *Inc. v. Calif. Sec'y Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (explaining how the

20  Ninth Circuit has interpreted the second and third *Eitel* factors to require plaintiffs to state a

21  claim on which they can recover).

22          **1.       Breach of Contract**

23          As an initial matter, it is unclear whether the May 2024 period included in the motion is

24  the same period in May 2024 contemplated by the Complaint. In any event, while Plaintiffs

ORDER ON MOTION FOR DEFAULT JUDGMENT - 5

1    sufficiently plead claims for breach of the CBA for fringe benefit contributions for February

2    2024 and May 2024 as well as a failure to timely submit the March 2024 contribution report, *see*

3    Dkt. No. 1 ¶¶ 29–38, Plaintiffs' motion does not appear to request relief for these violations. *See*

4    Dkt. No. 13 at 5 (discussing breach of contract for only the SA and fringe benefit contributions

5    for May, September, and October 2024).

6          Plaintiffs have not sufficiently pleaded their claim for breach of the CBA and SA.

7    Plaintiffs do appear to establish damages owed for breach of the SA and the new time periods

8    identified in the motion. *See id.* at 4–5, 10–11. But the SA is not mentioned or even obliquely

9    referred to in the Complaint, much less the existence of the prior case that led to it. The SA

10   should be enforced in that prior case, as the Court "retain[ed] jurisdiction to enforce the terms of

11   the [SA] between the Plaintiffs and Defendants." *Employee Painters' Trust*, No. C23-22, Dkt.

12   No. 25 at 3 (W.D. Wash. Sept. 14, 2023).[2] Moreover, Plaintiffs' motion is generally confused, as

13   it does not at all match the time period covered in the Complaint and does not ask for damages

14   from that time period (except perhaps for May 2024, though the extent of overlap between the

15   Complaint's request and the motion's request is unclear). There is also no indication in the

16   Complaint that Plaintiffs were seeking to recover for future delinquent contributions. For all

17   these reasons, default judgment will be denied without prejudice.

18          **2.    Violation of ERISA (Audit)**

19          Plaintiffs have sufficiently pleaded their claim for access to payroll records to complete

20   an audit, but only for the time periods identified in the Complaint (*i.e.*, February, March, and

21   May 2024). Plaintiffs allege that the CBA authorizes the trustees of Plaintiffs to audit the payroll

22

23   ───────────

[2] Indeed, Plaintiffs were denied entry of judgment by confession against Defendants by another court in this District and were instructed on this very point: "Because Judge Lin retained jurisdiction to enforce the settlement agreement in the prior action, the motion to enforce is not appropriately brought as a separate miscellaneous case here." *See Employee*

24   *Painters' Trust v. Lorn Coatings LLC*, No. MC24-42, Dkt. No. 7 at 2 (W.D. Wash. Sept. 24, 2024) (Evanson, J.).

1   books and records of participating employers, and that when an audit is authorized, the employer

2   must make its books and records available. *See* Dkt. No. 1 ¶ 22. Plaintiffs further allege that they

3   requested an audit but Defendant Lorn Coatings has "failed to produce the payroll and related

4   records." *Id.* ¶ 23; *see also id.* ¶¶ 40–43. These allegations, taken as true, are sufficient to make

5   this claim. Moreover, this equitable relief is appropriate. *See* 29 U.S.C. § 1132(a)(3)(B)

6   (authorizing civil action by participant, beneficiary, or fiduciary "to obtain other appropriate

7   equitable relief" to redress violations or enforce provisions of ERISA plan).

8          However, in the motion, Plaintiffs expand the relevant time period to include the period

9   covered by the SA (*i.e.*, July 2022 to May 2023 (Dkt. No. 14-1 ¶ 2)) as well as months that

10  followed the commencement of this action (*i.e.*, September and October 2024). To the extent

11  Plaintiffs seek an audit for the period covered by the SA, they should seek such relief in that

12  matter. To the extent Plaintiffs seek an audit for months after the Complaint was filed, that time

13  period is not alleged in the Complaint; however, Plaintiffs can move to amend the Complaint.

14  For all these reasons, default judgment will be entered as to an audit for February, March, and

15  May 2024, but otherwise denied without prejudice.

16         **3.       Violation of ERISA (Fringe Benefit Contribution Bond)**

17         Plaintiffs have sufficiently pleaded their claim for a fringe benefit contribution bond.

18  Plaintiffs allege that the CBA permits them "to request[ ] an employer to post a fringe benefit

19  bond to secure the payment of future contributions that may be due to the Trusts." Dkt. No. 1

20  ¶ 24. The CBA allows for the requirement of a bond "if the participating Employer has a history

21  of delinquent and/or late payment of contributions" or "has failed to pay required contributions

22  by the due date for two consecutive months." Dkt. No. 13 at 8. Therefore, "[i]n light of

23  [Defendant Lorn Coatings's] delinquency history, the Trusts determined that [Defendant Lorn

24  Coatings] is a chronically delinquent employer under the terms of the Trust Agreements and

1  written policies and procedures adopted by the Trusts." Dkt. No. 1 ¶ 25; *see also* Dkt. Nos. 14-3,

2  14-4, 14-5 (letters from Plaintiffs' counsel to Defendants' counsel identifying missed payments).

3  "[T]he Trusts have demanded that [Defendant Lorn Coatings] post a fringe benefit bond or other

4  acceptable security in favor of the Trusts in the minimum amount of $50,000.00 to secure the

5  payment of past, present, and/or future contributions." Dkt. No. 1 ¶ 25; *see also id.* ¶¶ 44–45.

6  These allegations in the Complaint, taken as true, coupled with the evidence of delinquent

7  payments, are sufficient to make this claim. For all these reasons, default judgment will be

8  entered as to the fringe benefit contribution bond.

9                                      *    *    *

10       Therefore, Plaintiffs' request for default judgment is DENIED WITHOUT PREJUDICE as to

11  breach of contract; GRANTED as to an audit for February, March, and May 2024, and DENIED

12  WITHOUT PREJUDICE otherwise; and GRANTED as to the fringe benefit contribution bond.

13  **B.       Amount of Damages**

14       In the motion, Plaintiffs seek $4,033.46 in delinquent contributions for May, September,

15  and October 2024 (Dkt. No. 13 at 4–5); $18,727.60 in liquidated damages "owed on the balance

16  due under the [SA] and post [SA] late submitted contribution reports" (*id.* at 11); and $5,556.11

17  in interest on the SA balance and post-SA late reports (*id.*). This request is almost 10 times the

18  amount of damages requested in the Complaint ($2,681.92 in delinquent contributions, $218.84

19  in liquidated damages, and $33.22 in interest (Dkt. No. 1 ¶¶ 26–28, 29–38)), and as previously

20  discussed, it is grounded in a completely different factual basis than that in the Complaint (*i.e.*,

21  missing or late reports from February, March, and May 2024 (*id.*)).

22       Under these circumstances, the Court finds that Defendants did not have adequate notice

23  of the scope and size of the damages award that would be requested. *See Gray Ins. Co. v. Lectrfy,*

24  *Inc.*, No. C13-1411, 2014 WL 12689270, at *6 (C.D. Cal. Mar. 3, 2014) (explaining that the

purpose of Rule 54(c)'s command that a default judgment "shall not be different in kind from or exceed in amount that which is prayed for in the complaint" is to allow the defending party to determine "whether to expend the time, effort, and money necessary to defend the action" (quoting Fed. R. Civ. P. 54(c) and 10 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2663 (3d ed. 1998))).

Therefore, Plaintiffs' request for damages is DENIED WITHOUT PREJUDICE.

**C.      Individual Liability**

Plaintiffs seek to impose individual liability on Defendant Thavy Lorn. *See* Dkt. No. 13 at 12–13; Dkt. No. 1 ¶¶ 46–50. Plaintiffs point out that the CBA (through the trust agreements) imposes liability on "the President, the Treasurer, and any corporate officer who is responsible for the payment of contributions." *See* Dkt. No. 15-2 at 31. Plaintiffs allege that Defendant Thavy Lorn, as owner, officer, director, and governor of Defendant Lorn Coatings, was responsible for making payment of contributions to Plaintiffs. *See* Dkt. No. 1 ¶¶ 12, 48.

Therefore, Plaintiffs' claim for individual liability for Defendant Thavy Lorn is GRANTED.

**D.      Propriety of Attorney Fees and Costs**

Finally, Plaintiffs request attorney fees and costs totaling $8,106.45, the total remaining after application of Defendant Lorn Coatings's payments under the SA. *See* Dkt. No. 13 at 12; Dkt. No. 14 ¶ 18. However, in light of the other rulings in this Order, the Court cannot fully assess the propriety of fees and costs at this time.

Therefore, Plaintiffs' request for attorney fees and costs is DENIED WITHOUT PREJUDICE. However, should Plaintiffs request attorney fees in the future, they should not include in that request any time spent for work on the instant motion.

## IV.    CONCLUSION

Accordingly, Plaintiffs' Motion for Default Judgment (Dkt. No. 13) is GRANTED IN PART and DENIED IN PART as follows:

(1)    Defendants are ORDERED to submit their payroll and related records for February, March, and May 2024 to Plaintiffs for the completion of an audit within **thirty (30) days** of this Order.

(2)    Defendant Lorn Coatings is ORDERED to post a $50,000.00 fringe benefit contribution bond within **thirty (30) days** of this Order.

(3)    The Court FINDS Defendant Thavy Lorn individually liable for Plaintiffs' claims.

(4)    The motion is otherwise DENIED WITHOUT PREJUDICE. Plaintiffs may amend their Complaint and/or renew their motion with regard to any requests that were denied, except that any requests relating to the enforcement of the Settlement Agreement shall be made by appropriate motion in *Employee Painters' Trust v. Lorn Coatings LLC*, No. C23-22 (W.D. Wash.).

(5)    Should Plaintiffs choose to amend their Complaint or renew their motion, any amendment or motions SHALL be filed **within sixty (60) days** of this Order.

Dated this 6th day of January 2025.

Tana Lin
United States District Judge